The court will now call case 117293, William Dennis Huber v. American Accounting Association. Are you ready to proceed? You may. Good morning, Your Honor. Your Honor, this is William Dennis Huber, Petitioner-Appellant. Thank you for granting me petition for leave to appeal. There is one issue before the court at first, and that is, does the United States Postal Service postmark established date of mailing for a notice of appeal? My conclusion is yes, as I will articulate. On March 6, the Circuit Court granted without opinion the Respondent's 619 motion to dismiss based on an affidavit of the Executive Director of the Respondent. That made the notice of appeal due on 4-5. On 4-3, I mailed the notice of appeal. It was received on 4-9. Apparently, I left the affidavit in the copy machine, and it was not included in the notice of appeal. The Fourth District then denied jurisdiction, saying that the affidavit of service was not included, even though there was a clear, legible United States Postal Service postmark on file, on the envelope, on file in the record. May I ask a question about the record, sir? Yes. You've said that there's a clear United States Postal Office postmark. We have the record, of course, and we can see that this envelope has, in the upper right-hand corner, not a flag stamp or something like that. It has rather a barcode that then says, U.S. postage, 88 cents, FCM letter, date of sale, 4-3-13. And on the side, it says APC. My understanding is that APC stands for a self-service kiosk that allows customers to do a number of things, including buy a stamp. So what is this? Is this an APC stamp? Why are you suggesting that this is a postmark? When, in fact, the clear language of the record says, date of sale. Because it was issued by the United States Postal Service on the date indicated. You go to the post office, you pay your money, you get a postmark label, and you put it on the envelope, and it's mailed. So you're saying the stamp is in of itself? This is not a postage stamp, like a forever stamp or something like that. It is a label issued by the United States Postal Service that you pay money, get the label, has the date on it. Date of sale? Yes. And then you attach it to a letter. Yes. Does it tell us anything about when the letter was mailed? Well, it would have to be on the third. What else would it be on? If you bought the stamp on the third, why couldn't you have mailed it on the fifth? Well, I would imagine that you could say that for any label that you purchase from any post office. Whenever you go to the counter, you get a label that has the date on it. So let's talk about the rule. And the rule, of course, is about bringing clarity to the mailbox. So a court can determine whether or not the person complied with the date of filing required. So may I continue then? I'm not sure what you're suggesting. Well, you've argued that this is a plain postmark, a clear postmark, and therefore, because it was so clear that the rule requirement should be relaxed. And so I've just asked you some questions about the record of whether that's true, that there is in this record a clear postmark. Well, let me follow up with a question based on what Justice Tice has asked you. I don't know if this is of record, so he as well as Mr. Tracy can make it clear today. Because I'm familiar with these labels. I've purchased postage at the counter. And I've never had a situation, at least when I've purchased it, that the clerk doesn't put it on it and take the envelope and put it in the bin for processing. I mean, do we know of record? Is that what happened here? Or did something else happen? Do we know of record? I don't have an affidavit from the post office saying what happened, no. Okay. Thank you. We're beating it to death, but I don't think that's what Justice Kilbright's asking. I mean, I don't think that... I'm of the same, at least historical background that... I have the same historical background, I think, that Justice Kilbright has. If I've gone to the post office, they take the thing, they put it on there, they grab it, they throw it in the bin. The question isn't an affidavit from the post office as to what they did. I think what Justice Tice was asking is, although we don't have that in our background, in our historical background, I assume that perhaps the person could get the sticker put on there and then grab it and say, hey, I'm going to take it home for some reason and then mail it the next day. We're just saying that's not what typically happens, and I guess in our experience, and I guess that's what you're saying. I'm not aware that the post office would accept it if it's mailed any other day. I've never heard of that happening. We don't know one way or another. So in other words, going back to what our case is about, is the nature of our rule. And our rule says there has to be an affidavit or certification of the date of mailing. There is none here, and we have questions about what it is that is on this letter. Well, the only thing I can say is the U.S. Post Service issued postmark label. There's no other way to explain it. I don't know any other words to use or any other language to use that could explain it. If we were to agree with you, would it turn then on whether the postmark was legible or illegible? Yes, it would, because the rule was adopted, as the committee notes say, and as Case and Hansen says, that the rule was adopted that the affidavit is required if there's no postmark or if the postmark is illegible, neither of which is the case here. The case that the 4th District relied on, as does the respondent, was the Secur case, which you ruled on some five years ago, but that was not really on point because that dealt with a case where there was no postmark and there was no affidavit. It was merely a cover letter. So that's not really on point because it doesn't address the question of is there a legible postmark. But is legibility of a postmark an appropriate distinction? Because it's not in the control of the party whether or not the postmark is legible at the time it's received in the clerk's office. Well, it's not in the party's control whether or not the postmark is legible. Nobody else makes that postmark legible or not. Not the party. The Postal Service makes the postmark legible. Not a party, for example. I'm sure everyone here gets mail with a private post meter. I have one here as an example. There's nothing here from the post office. It doesn't say date of sale or APC or anything else. It's a private post meter. That could be manipulated, change the date on the meter. This is from the post office, so it can't be changed. It's clear, it's legible, as you can see from the record. You can read it so it's clearly legible. But then you be taken as a party who's filing or wanting to file this. Your jurisdiction rises or falls on whether it's legible and that's something you have no control over. So in other words, if it arrives and it's not legible, you're out of the box. And you don't have an affidavit. So you'd have to bank on, you couldn't count on the fact that you mailed it. Because it takes something else to really make the final determination. Determination of the postmark, do you mean? Yes, which is why it's there. So the post office is the one who determined it was postmarked on the 3rd. Thank you. Now the Hanson Court recognized that an affidavit in addition to a legible postmark was, as they say, a corroborative redundancy. That the postmark was sufficient to establish, even though there was no affidavit. And if I may read one sentence from your own opinion, Mr. Cura, in case you're honest. The reason for such a requirement is elementary. If there's no proof of mailing on file, there's nothing in the record to establish the date the document was timely mailed to confer jurisdiction on the appellate court. I would suggest the opposite is true, that if there is something in the record, then that does confirm the date of mailing and confers jurisdiction upon the court. Now what the affidavit itself requires is the affidavit to swear to something that is physically, excuse me, Your Honor, I'm taking some medication, swearing to something that is physically impossible to do. It is now 1130. Could any of you swear in an affidavit saying that you ate dinner today at 5 o'clock? That would not be true. Because an affidavit is something... Did you say at the outset of your remarks that you left the affidavit in the printer? So you were going to do the physically impossible. No, no, no. The act of what is sworn to in the affidavit is physically impossible. Where the affidavit is saying I, at 930 or 4... This office, for example, the clerk's office closes at 430. Attorney from Mr. Tracy's office, certified, I mailed this document at 5 p.m. Well, obviously that's not true because at 430 you can't know what happened at 5 o'clock. You can't go into the future. It's physically impossible to say that I did something in the future. I mean, you can execute the affidavit, but it has no legal significance because it's impossible to perform the act sworn to. What is an affidavit? An affidavit is something that is based upon personal knowledge and that can be testified to in court. There's no way that you can testify in court saying I did something in the future. To require an affidavit in addition to a postmark would be to penalize a party for not swearing to something that is physically impossible to do. If you were to hold that we require an affidavit in addition to a postmark, you would also necessarily imply that you would have to hold that everything stated in the affidavit must also be true. And we know that's not possible because it refers not to something of personal knowledge but to something in the future. The respondent does not argue with my logic about it being impossible to perform an act in the future. You merely say, essentially, everybody's doing it. When your kids ask you to go to a concert, you say, everybody's going. You say, well, just because everybody's doing it doesn't make it right. To swear to something that is physically impossible to do and then penalize them for not doing it is pretty much of an injustice. The rule itself was not adopted for that purpose. The committee notes, and Hanson notes the committee notes, saying that it was not intended to replace the postmark. It was intended to supplement. It was intended to help the parties not to penalize. If I may, Your Honors, read just slightly from Hanson. Rule 373 was revised to address the problems of illegible postmark and late place postmark. It was not written to compel courts to disregard clear evidence that a postmark provides a timely mailing of a document. It would be axiomatic if there is timely legible postmark and affidavit or certification is a corroborative redundancy. So if you were to hold that the affidavit is required in addition to a clear legible postmark, you would essentially be saying, well, we know it's impossible to perform the act that the applicant swore to, but we're going to require it anyway. In addition, requiring an affidavit in addition to a postmark would open the door for all kinds of manipulation. Anybody can sign a certificate or an affidavit saying I mailed it on a certain date, get a postage stamp, one of those forever stamps, put it on an envelope, put it on his desk for one, two, three weeks, and then mail it. Postmark would prove it was mailed well past the deadline, but now you have an affidavit saying that it was mailed by the deadline, which provides better objective evidence. An affidavit which is self-serving about something in the future that could not be physically possible to perform, or the actual physical postmark which would prove that it was mailed past the deadline. It's basically a form over substance in that case. The affidavit certainly serves purposes, but it should not be used to replace other objective evidence issued by the post office. Respondent also says, well, it would nullify every other affidavit. Well, that's ludicrous because we're not talking about affidavits where a person is swearing to something on personal knowledge, has personal knowledge, and could testify to in court. It would not nullify any such thing. What the court should consider is to clarify the rule and say that when there is a clear legible postmark, that is acceptable for proving fate of mailing. And in that case, the fourth district should be reversed and sent back. You have an alternate argument. Maybe you touched upon it. Let's just say we do find it legible and we find it a valid postmark. You said that then four days after that, I think you made the comment that under, let's see, 12C, Rule 12C states that service by mail is complete four days after mailing. So you're saying if you take that in line with the date of the postmark, that you're, go ahead, make your argument. Okay, so what I'm referring to with the four days is it was stamped received on the ninth. Four days prior to that is the fifth, which was the deadline. So the fact that it was received on the ninth, no question, stamped by the clerk's office categorically proves that it would have been mailed four days prior to the time it was received, which would have been on the fifth, which was well within the deadline. You're looking backward, right? 12C says service by mail is complete four days after mailing. So you're saying if it's received on the ninth, it necessarily had to be sent on the fifth. Yes, Your Honor. At a minimum, because what if this mail didn't arrive on time like it does often? If it didn't arrive, then it would be stamped received on the 10th, the 11th, whatever. Well, no, I meant if you mailed it much earlier, and even though it arrived on the ninth, it doesn't show, it doesn't prove that it was stamped on the fifth. No, but what it would prove is it could have been mailed no later than the fifth. Okay, but not that it proves that it was mailed on the fifth. On or earlier, but certainly not after, because then it would not have gotten there until the 10th. Well, that's not necessarily so. I mean, you have mail that turns around in a day or two, right? That's why I said you're looking at it backwards. The rule says service by mail is complete four days after mailing. You're using that to say if it's received on the ninth, it necessarily had to be mailed on the fifth. Well, not necessarily. It could have been mailed the eighth and gotten there in one day. Not from Miami, Your Honor. I'm in Miami. Well, I understand, but it doesn't necessarily take four days. I mean, it could be two days. It could be three days. Couldn't it? I'd have to ask the Postal Service for that. I'm sorry, Your Honor. I don't know the answer to that, because if it says four days, then I have to assume it's four days. Whether it could be or not, we're going by the statute which says four days. Isn't the answer to all of these questions a rule that says you have to file a certification that you mail it? What we're saying is there are all sorts of vagaries that can happen in terms of the mail and whether this is really a postmark or not, whether it's legible or not. There are all sorts of issues that could arise. Our rule draws a very clean line. You have to file a certification, and that answers all of these questions. And that was my argument, saying that just to require an affidavit doesn't make it so, simply because it can be manipulated by signing an affidavit, which does not necessarily mean it's true, because it's something that's impossible to comply with. The fact in the affidavit is impossible to comply with, and you could leave it sitting on your desk for a week, and the affidavit would say one thing, and the facts would prove something else. That was my argument, Your Honor. Thank you, Counsel. May it please the Court, and Professor Huber, my name is Don Trey Sam with Brown Hand Stevens here in Springfield, and I represent the Appley American Accounting Association. Mr. Tracy, I know you haven't had a chance to say too much yet. I understand that. That's very true, Your Honor. But I do think that I understand, and I think the Court understands the reason, good reasons for strict compliance as a general policy. But looking at, or listening to the argument before, there is something appealing about saying that if indeed you have a valid postmark, in this case, what was it, April 3rd, is that right? If you have a valid postmark, why is that not better evidence of the time it was mailed than an affidavit, which necessarily is probably subject to more manipulation than a valid postmark is? Well, for the reasons alluded to by the Court already in your questions to Professor Huber, legibility issues, the later fixing of a postmark, those are the two reasons cited by the committee in removing the postmark as proof of mailing from the rule in 1981. And then I suppose you could have possibly some manipulation in the post office. I mean, obviously, a government postmark is more reliable than a private meter mark. So manipulation is much less of an issue, but, you know, things do happen even in government. So those are the three reasons that come to mind on why the postmark was taken out of the rule and should not be put back in the rule by the 2nd District, as they did in Hansen. The result here, I'm sure Professor Huber thinks is harsh and unfair. He said it was unfair before you. But the mailbox rule itself, your rule, is not a harsh rule, as you said in the secure case. It's a relaxing of the requirement. And, Justice Thomas, you said that I'm arguing for strict compliance, and I'm not, really. And your honors have not strictly construed the mailbox rule. And you have said that in the case of incarcerated prisoners, they just have to put it in the prison system, mailing system, not a post office box, and they can take advantage of the mailbox rule. In entering a supervisory order vacating the People v. Smith case out of the 4th District and directing them to vacate their judgment holding a notice of appeal untimely, because a 1-109 verification was used for proof of service instead of an actual notarized affidavit, you said that a verification is as good as an affidavit in that case. That's another example of substantial compliance. And I think that was a very good decision. I've always assumed that a 1-109 verification was as good as an affidavit for all filings in the courts, whether they're a filing under the code, which is where 1-109 comes from, or a filing under the rules, which is what we're talking about today. So, no, I'm not advocating strict compliance. I'm advocating substantial compliance. But unlike in the Hansen case where there was actually a verification, a verified proof of service, and a postmark, and unlike the Smith case, which you vacated and reversed, in effect, both were cases of substantial compliance. There was no compliance in this case. There was zero compliance with the mailbox rule. And it's not a hard rule to follow. It's not an ambiguous rule. It requires a simple one-page affidavit of service or certificate of service. It's not a complex rule. It's not difficult to follow. All you have to do is file that one piece of paper. It's not a high bar. But this, the professor, did not do. And he's also a licensed New York attorney as well. He did not do. Why, you might ask. Why didn't he do it? Well, he said today, the first time I've heard in this case, that he left it in the printer or left it in the copy machine, I guess. But if he did that, why didn't he file a motion under 303D for late filing based on reasonable cause? It's a puzzlement why he didn't do that. Perhaps he didn't know about the mailbox rule. If he didn't know about the mailbox rule, though, he knew the deadline was April 5th. He says he mailed it April 3rd. He bought the postage on April 3rd, anyway. Why didn't he overnight it? He knew it was April 5th, and he didn't know about the mailbox rule. So it is a puzzlement why he didn't do this certificate. But now he's in a position where he has to argue a return to the pre-1981 rule of having postmarks. There were problems with that, and that's why the rule was changed. Furthermore, in this case, as Justice Tice alluded to, there is no postmark. It's just a postage meter label. And the Supreme Courts of Idaho and Pennsylvania have both said that in the case of private meter labels, they're not reliable because they can be manipulated, and they don't prove data mailing. They just prove purchase of postage. Well, this was a government mailing label, so manipulation is less of an issue. It was bought from a kiosk, as Justice Tice said, automated machine. But it also has the same flaw as private meter labels, is that it does not prove date of mailing. It only proves purchase of postage. I have here a copy of the envelope. This is page 30 of the appendix of the opening brief of the file. I took two copies of the envelope for some reason, but I took just one of them and blew it up. And so this is the actual envelope that the prosecutor attached to the brief. And it shows that it is a mailing label. It's not a postmark. It's a Boston postmark. The Santa Claus Indiana postmark is very popular in December. It's round, and it has the place of mailing on it. It has a date on it. The rule requires proof of service under the closing brief. Mr. Tracy, what is the notation, excuse me, right underneath the address and to the left of the received mark, towards the bottom of the envelope? Correct. What is that? Well, the first part is the zip code, 6271. Okay, go ahead. Is there any date referred to in that? No, Your Honor. I'm speculating here that the rest of it is maybe the fuel box for the clerk. I don't know. The first five letters of the zip code, 6271. Okay. Do you know what page in the record that it's found? A30. I thought you said it was exhibit. I thought it was exhibit A30, no? No. That's what I thought. Page A30. Page A30 of the common law record? No, of the Supreme Court. Oh, the appendix. Yes, sir. Okay. All right. Thank you. But I wanted to know where to find the original. And the original, as I indicated, shows two envelopes, but it's really just one envelope. It's just a one envelope. God blew up. It's the same. Okay. When you say this was purchased at a kiosk, does that mean the purchaser gets the envelope and then takes it to a mailbox? Yes, Your Honor. Exactly. So we have no knowledge as to whether this was mailed the same. That's right. And that's the difference between a postmark and a label. A label proves two of the four things that Rule 12b3 requires. It proves purchase of postage prepaid, and it proves the complete address, because presumably the label's on the envelope. So we've got those two things. But the rule also requires time of mailing and place of mailing. Postmark has place of mailing on it and date of mailing, but the label doesn't have either of those two things. So label proves two of the four things, and postmark proves four of the four, but still postmarks were eliminated from your rule for, I think, good reason. Now your opponent has argued a couple of times that the affidavit is an impossibility because it's swearing that you're doing something in the future. How do you respond to that? Well, as an officer of the court, when an attorney signs it, they're putting the law license at risk if it's not done. And a layperson has to sign under oath, so that's risk of perjury. It is a forward-speaking affidavit and certificate of service. It's basically certifying that it is going to be placed in the mail. So perhaps it's different than an affidavit as to past acts, but it is the sort of thing that has been used in the courts for many years. And as I said, to give a false affidavit like that, to say you're going to do it and then you don't do it, you're putting yourself at risk. There's also, just to illustrate the point about the difference between a postmark and a label, and to address an issue raised earlier, I have here, which is from the Appellate Corporation, which certified copies which had been filed in support yesterday. And this is page 13 in the appendix to the reply brief that Professor Huber filed in the Appellate Corporation. And he submitted this for another reason, to show that we only submitted one copy of the appellate brief, which is a mistake. But it illustrates the difference between a mailing label and a postmark. Because on this exhibit, there's a mailing label here, and then there's also a postmark. And this was a mailing label. It's different from the first mailing label because it was purchased over the counter. And as I understand the rule of the post office, and this answers your question, is that if you do buy a mailing label over the counter, they cannot give it back to you. They have to take the mail and mail it. Because they're taking it into their custody. When you buy a mailing label at a kiosk, as Professor Huber did, then you're on your own. I mean, you can put it on the envelope, and then you take it to a mailbox, and you mail it whenever. This came from an affidavit in the appellate court brief. And the affidavit, I think it was A2 through A13. And in that affidavit, Professor Huber says, and this was filed in September, five months after the fact, that he mailed the Notice of Appeal filing from ZIP Code 33.94, which is his return address, presumably where he resides in Miami. But as this mailing label clearly says here, the extended displacement, I think that it is his purpose, that the mailing label he bought with the Notice of Appeal envelope was purchased in a different ZIP Code, 33.94. So this shows that you can buy a mailing label wherever, but that's only one step of the process. The second step is you have to take it to a mailbox, which can all be avoided by a certificate of service. The Hansen case is wrong for reasons we've already alluded to. They don't have, the court doesn't have the power, the appellate court doesn't have the power to amend or supplement or add to your rules, obviously. Your Rule 373 says proof of mailing shall be, as provided by Rule 12.B.3. It doesn't say may. And in turn, Rule 12.B.3 says service by mail is proved by affidavit or certificate. It doesn't say may be proved by certificate or affidavit. Also, we've alluded to the fact the rule was changed to eliminate postmarks as proof of mailing. Third, the Hansen decision was dicta in a couple perhaps different ways, in that one way it affirmed the trial court decision denying relief to the incarcerated prisoner in that case. And also, as I pointed out, in Hansen there was also a verified proof of service, not just a postmark. Fourth, the appellant in Hansen was a pro se incarcerated prisoner who had been convicted of first degree murder, who had no access to post office, and who was asserting an important constitutional right, liberty. Here, as noted, the appellant is a professor and a licensed New York attorney. I've already talked about the Smith case and why the Smith case, your decision in Smith, would not be inconsistent with your affirming the Fourth District in this case. Because in that case there was substantial compliance with the mailbox rule in the form of a 1-109 verification. So in this case we have zero compliance with the mailbox rule, and in the Smith case we had substantial compliance. I'd like to emphasize again that this is not a harsh rule. The rule is you have to file by the deadline, and the deadline in this case was April 5th. But the mailbox rule was put into place to relax that requirement. It's sort of a grace period. It's a savings clause. But to take advantage of that savings clause, to take advantage of that grace period that you have provided in the rules, you have to comply with it. In that sense, I think the argument being made here, and to some extent being made in Hansen, if they were relying solely on the postmark, not on the verified proof of service, is that there should be a savings clause to your savings clause, which is what the mailbox rule really is. In conclusion, notice of appeal here was not timely filed. It was filed April 9th, as the envelope shows, four days late. And the savings clause in the form of the mailbox rule was not complied with, and therefore the 4th District decision was correct, and we believe it should be affirmed. Thank you. Thank you. Mr. Huber? Thank you. Well, first, to answer the question why I didn't mail an affidavit of service afterwards, it was because I didn't know it wasn't included until it was brought up by the respondent. I had no way of knowing that. Second of all, the fact that he brought an envelope showing something that I had mailed proves the ability to manipulate and abuse and lie in an affidavit. The envelope he's referring to, I was referring to Stephanie Hammer's affidavit saying that she mailed three copies of a brief to me on a certain date. However, there was only one copy in it. Not a big deal. I don't care. I can make my own copies. The point being, she certified that it was three. How easy is it to lie in an affidavit? Anybody can say something, certify or swear to, that doesn't make it true. The arguments have not proven that it was not mailed on the 3rd when the label was issued. The mailing label, the USPS, United States Postal Service postmark, was purchased at the US Postal Service machine, dated the 3rd, mailed the 3rd. There's no way that it could not have been mailed on the 3rd. There's nothing to suggest here that it was not mailed on the 3rd. There is a way. Right. I mean, that's not accurate, that there's no way it couldn't have been mailed on the 3rd. I mean, if you have it at the kiosk, the requirement of the post office isn't there to mail it at the time that they put on the label, because they're not putting on the label. You're putting on the label. Right? So you could get a phone call and have to run home and forget. I mean, there is a way that it couldn't have been mailed on the 3rd, right? Well, that would be as physically possible, I guess, as physically saying that you mailed it on a certain day in the affidavit and not mailing it that day at all. I guess if you're going to trust in an affidavit that can be lied to over an objective postmark of a post office, then anything that's up for grabs, anything can be manipulated. I mean, that's the heart of this case. We're trying to decide what is the best evidence, perhaps, way to look at it, in terms of mailing. And the rule says affidavit of certification. And you're arguing postmark. Right? So my question is, is this a postmark? And doesn't a postmark have a definite definition from the U.S. Postal Office? Black ink identifying the post office that it was received at, a mark indicating the date it was received at that location, and a cancellation of the stamp. And if you don't have that, then aren't we in this area of not knowing when the mail was mailed? And, therefore, doesn't the rule make sense? Labels from the window are not canceled by hand either. They just put the label on it, and it's thrown in the bin with all the other ones. But when it's received, because we're talking about what happens, how do we know when it was mailed? When it's received, there's a stamp on it that has black ink, the name of the post office, the place of the post office, the date that it was mailed. Right? There's a mark on it that gives us that information. And here, this one does not have that information. It has a date that it was issued by the post office. And I would suggest that that's sufficient, if it comes from a third party, objectively, that it's sufficient to prove the date that it was mailed. I guess that's all I have. Thank you. Thank you, Mr. Huber. Case number 117293, William Dennis Huber v. The American Accounting Association, is taken under advisement as agenda number 19. Mr. Huber, Mr. Tracy, you're thanked for your arguments today. You're excused. Mr. Marshall, the court stands adjourned until tomorrow morning, September 18, 2014, at 9 a.m. Thank you.